1 | LINDA CLAXTON, CA Bar No. 125729
linda.claxton@ogletree.com
2 | DANIEL N. ROJAS, CA Bar No. 326115
daniel.rojas@ogletree.com
3 | OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4 | 400 South Hope Street, Suite 1200
Los Angeles, CA 90071
5 | Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendant
BLUETRITON BRANDS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN D. MAUL, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLUETRITON BRANDS, INC.; and Does 1 through 100, inclusive,<br><br>Defendants. | Case No. _____<br><br>**DEFENDANT BLUETRITON BRANDS, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Notice of Related Cases; Declarations of Kara Tranquillo and Daniel N. Rojas in Support of Removal]<br><br>Complaint Filed: April 25, 2024<br>Trial Date: None<br>District Judge: Hon. _____<br>Courtroom __, _____ |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF JUSTIN D. MAUL AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant BlueTriton Brands, Inc. ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Riverside to the United States District Court for the Central District of California under 28 U.S.C. § 1332(d) (the Class Action Fairness Act ["CAFA"]) and § 1446 because (1) BlueTriton Brands, Inc. is a citizen of a state different than Plaintiff; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. All CAFA requirements are satisfied.

The foregoing facts were true when Plaintiff filed his Class Action Complaint ("Complaint") and remain true as of the date of filing this Notice of Removal. Removal jurisdiction is therefore appropriate as detailed more fully below.

## I. STATE COURT ACTION

1. Plaintiff filed his Class Action Complaint on April 25, 2024 in the Riverside Superior Court ("Action"). *See* Declaration of Daniel N. Rojas ("Rojas Decl."), ¶ 1. The Action was assigned Case No. CVRI2402319. *Id*. A copy of the operative Class Action Complaint is attached as **Exhibit 1**.

2. Plaintiff's Complaint asserts: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Breaks; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Waiting Time Penalties; and (7) Violation of Unfair Competition Law.

3. Plaintiff served his Complaint on Defendant on May 8, 2024. *See* Rojas Decl., ¶ 3. A copy of the proof of service is attached as **Exhibit 2.**

///
///

4. On May 31, 2024, Defendant filed an Answer to Plaintiff's Complaint in the Riverside Superior Court. *See* Rojas Decl., ¶ 4. A copy of the Answer is attached as **Exhibit 3.**

5. As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings, and orders received by Defendant in this action. True and correct copies of the rest of the documents are attached as **Exhibit 4** to this Notice of Removal. *See* Rojas Decl., ¶ 5. Defendant has not been served with any pleadings, process, or orders besides those attached. *Id*.

6. Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

## II.   REMOVAL IS TIMELY

7. Under 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a), Defendant's deadline to remove the Action is June 7, 2024. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999). This removal is timely.

## III.   REMOVAL IS PROPER UNDER CAFA

8. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which (1) any member of a class of plaintiffs is a citizen of a state different from any defendant; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes such removal under 28 U.S.C. § 1446.

9. This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as a class action wherein at least one member of the putative class is a citizen of a State different from Defendant, the number of

individuals in the proposed classes in the aggregate is over 100, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

### A. CAFA's Diversity of Citizenship Requirement is Satisfied

10. <u>Citizenship of Plaintiff and putative class members</u>. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

11. The Complaint alleges that "Plaintiff is and was a resident of California …" Ex. 1, ¶ 3. The Complaint further alleges that "Plaintiff … was employed by Defendant[] in the State of California." *Id.*

12. Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. Ex. 1, ¶ 42; *see, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiff was somehow a citizen of Connecticut and/or Delaware as Defendant is (and there is no evidence that he is), there is no possible way that the citizenship of hundreds of putative class members, all of whom worked in California (Ex. 1, ¶ 42), were also citizens of Connecticut and/or Delaware.

13. <u>Citizenship of Defendant</u>. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1184. The Court further clarified that the principal place of business is the place

1  where the corporation "maintains its headquarters – provided that the headquarters is
2  the actual center of direction, control, and coordination." *Id.*
3       14.   At all relevant times, Defendant has been a citizen of Connecticut and
4  Delaware.  First, Defendant has been a company organized under the laws of
5  Delaware.  *See* Declaration of Kara Tranquillo ("Tranquillo Decl."), ¶ 3.  Second,
6  Defendant's principal place of business is in Stamford, Connecticut.  *See* Tranquillo
7  Decl., ¶¶ 3-4.  Defendant's principal place of business is in Connecticut because its
8  headquarters are located there, and that is where Defendant executive management
9  directs, controls, and coordinates its activities.  *Id.*  Defendant has not been
10 incorporated in California and has not had its headquarters, executive offices, or
11 principal place of business in California.  *See* Tranquillo Decl., ¶ 5.  Accordingly,
12 Defendant is a citizen of Connecticut and Delaware, and not a citizen of California.
13      15.   The citizenship of fictitiously-named "Doe" defendants is to be
14 disregarded for the purposes of removal.  28 U.S.C. § 1441(a); *Newcombe v. Adolf*
15 *Coors Co.*, 157 F.3d 686 (9th Cir. 1998).
16      16.   Minimal diversity is established because Plaintiff is a citizen of
17 California and Defendant; is a citizen of Connecticut and Delaware.  Removal is
18 therefore proper under 28 U.S.C. § 1332(d).  *Serrano v. 180 Connect Inc.*, 478 F.3d
19 1018, 1019 (9th Cir. 2007).

    **B.   CAFA's Class Size Requirement Is Satisfied**

21      17.   Plaintiff brings the Action pursuant to California Code of Civil
22 Procedure § 382 on behalf of numerous subclasses (collectively defined as the
23 "Class"), including persons that fall within this category:

> All current and former hourly non-exempt employees
> employed by Defendants as direct employees as well as
> temporary employees employed through temp agencies in
> California at any time from four (4) years prior to the filing

of the initial Complaint in this matter through the date notice is mailed to a certified class … Ex. 1, ¶ 42.[1]

18. Defendant's employment records show that there are hundreds of current and former employees who fall within Plaintiff's proposed class. As of the date of removal, during the Class Period (April 25, 2020 through February 22, 2024), Defendant employed, in the aggregate, at least 1,348 employees in the putative class. Rojas Decl., ¶ 10. Thus, CAFA's size requirement is satisfied.

### C. CAFA's Requisite $5 Million Amount In Controversy Is Satisfied

19. Plaintiff has not alleged a specified amount in controversy in the Complaint. *See generally* Ex. 1.

20. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

21. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing

---

[1] Plaintiff seeks to represent 9 different classes. *See* Ex. 1, ¶ 42(A)-(I). Plaintiff refers to these 9 classes collectively as the "California Class." *See* Ex. 1, ¶ 42(J). However, all 9 classes are styled as including "All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class." *See* Ex. 1, ¶ 42(A)-(G).

*Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

22.     In alleging the amount in controversy for purposes of CAFA removal, Defendant does not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint.  Nor does Defendant concede that any or all putative class members are entitled to any recovery in this case, or are appropriately included in the Action. While Defendant denies the validity of Plaintiff's claims and requests for relief and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum.  *See Guglielmino*, 506 F.3d at 700.

23.     As described further below, as well as in the concurrently filed declaration from Daniel N. Rojas,[2] the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

### 1. Defendant's Estimate of the Amount in Controversy

24.     In determining the amount in controversy to support its Notice of Removal, Defendant relies on a conservative estimate based only on damages sought

---

[2] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy.  *See, e.g., Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its

by Plaintiff in his Complaint as a result of the alleged: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; and (4) Failure to Provide Rest Breaks. Because the amounts in controversy for these four claims alone satisfy the jurisdictional minimum requirement of $5 million, Defendant does not include additional estimates of the amounts placed in controversy by Plaintiff's other allegations in the Complaint, including potential damages sought for the allegations of: (5) Failure to Provide Accurate Itemized Wage Statements; (6) Waiting Time Penalties; (7) Violation of Unfair Competition Law; and (8) attorneys' fees. *See generally* Ex. 1; *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that when an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes). That said, Defendant reserves the right to do so in opposition to any remand motion.

**(a)   The amount placed in controversy by the minimum wage claim.**

25.   In his First Cause of Action, Plaintiff alleges that Defendant failed to pay putative class members at least the minimum wage for all hours worked. *See* Ex. 1, ¶¶ 13, 47. Plaintiff's Complaint alleges widespread and regularly-occurring instances of unpaid wages. Plaintiff alleges the following with respect to his minimum wage claims:

---

employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

- "Plaintiff and similarly situated hourly non-exempt employees worked more minutes per shift than Defendants credited them with having worked. Defendants failed to pay Plaintiff and similarly situated employees all wages at the applicable minimum wage for all hours worked due to Defendants' policies, practices, and/or procedures …" Ex. 1, ¶ 15.

- "Requiring Plaintiff and similarly situated employees to travel off-the-clock to and from a designated area for meal breaks." Ex. 1, ¶ 15(a).

26.  "Defendants' policies, practices, and/or procedures required Plaintiff and the Minimum Wage Class to be engaged, suffered, or permitted to work without being paid wages for all of the time in which they were subject to Defendants' control." Ex. 1, ¶ 47.

27.  Labor Code Section 1194(a) provides:
> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

28.  Based on Defendant's records, the approximate number of current and former non-exempt employees who worked for Defendant in California from April 25, 2020 through February 22, 2024 ("putative class members") is **at least 1,348**. *See* Rojas Decl., ¶ 10. These putative class members worked an aggregate of **at least 172,378** workweeks during that period. *See* Rojas Decl., ¶ 10. The average hourly rate of the putative class members was $23.00 per hour during this period. *Id*.

29.  Based on the above facts and allegations contained in Plaintiff's Complaint, Defendant's calculation of the amount placed in controversy based on Plaintiff's allegations in support of his claim for unpaid minimum wages is **at least $3,964,694.00** ($23 x 1 hour x 172,378 workweeks). The computation of the amount in controversy is based on a conservative calculation that the minimum **1,348**

putative class members worked at least **172,378** weeks during the Class Period, that putative class members earned an average regular rate of $**23.00** per hour, and that each putative class member incurred <u>**one (1) hour**</u> of unpaid minimum wage for every week of work.

30.  An estimate of one hour of unpaid wages for every workweek has been accepted by the federal courts as a reasonable and conservative figure.  See *Kincaid v. Educ. Credit Mgmt. Corp.,* No. 2:21-CV-00863-TLN-JDP, 2022 WL 597158, at *3 (E.D. Cal. Feb. 28, 2022) (finding assumption of 1 hour of unpaid minimum wage per week was reasonable given the Complaint's lack of specific allegations to the contrary); *Kastler v. Oh My Green, Inc*., No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (stating that an assumption of 1 hour of unpaid minimum wage per week was a "conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations"); *Soto v. Tech Packaging, Inc.,* 2019 WL 6492245, at *5 (finding reasonable Defendant's assumption that the class members were not compensated for one hour of minimum wages per work week where plaintiff alleged a "pattern and practice" of wage abuse); *Soto v. Greif Packaging, LLC,* 2018 WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018) (finding allegation that defendant failed to pay minimum wage for all hours worked on a "consistent and regular basis" sufficient to support estimate of one hour per week per class member); *Patel v. Nike Retail Servs., Inc*., 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (approving one hour of unpaid wages "to be appropriately considered toward the amount in controversy").  This is especially the case where, as here, the plaintiff fails to provide specific allegations concerning the frequency of which he worked without being provided the requisite compensation.  *See Byrd v. Masonite Corp*., No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

31.　Consequently, the amount placed in controversy by the allegations by Plaintiff in support of his Minimum Wage Claim is at least **$3,964,694.00**.

### (b)　The amount placed in controversy by the overtime wage claim.

32.　In his Second Cause of Action, Plaintiff alleges that Defendant failed to pay putative class members for all overtime worked. Ex. 1, ¶¶ 24, 59. Plaintiff's Complaint alleges widespread and regularly-occurring instances of unpaid overtime. Plaintiff alleges the following with respect to his minimum wage claims:

- "Defendants maintained a policy, practice, and/or procedure of failing to include all remuneration such as failing to include 'shift 2' in the regular rate of pay, for example, when calculating Plaintiff's and similarly situated employees' regular rate of pay for the purpose of paying overtime." Ex. 1, ¶ 24.

- "Defendants' foregoing policy, practice, and/or procedure resulted in Defendants failing to pay Plaintiff and similarly situated employees at their overtime rate of pay for all overtime hours worked." Ex. 1, ¶ 25.

- "[W]hen Plaintiff and Regular Rate Class Members earned overtime wages, Defendants failed to pay them overtime wages at the proper overtime rate of pay due to Defendant' failure to include all remuneration when calculating the overtime rate of pay." Ex. 1, ¶ 61.

33.　California Labor Code § 510 provides, *inter alia*, that any work in excess of 8 hours in a workday or 40 hours in a workweek shall be compensated at one and one-half times an employee's regular rate of pay. Any work a non-exempt employee conducts over 12 hours in one day or 8 hours per day on the seventh consecutive day of work shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

34.　Based on a review of Defendant's business records, putative class members worked **at least 172,378** workweeks during the Class Period. *See* Rojas

Decl., ¶ 10. Putative class members' average hourly rate of pay[3] during those 172,378 workweeks was $**23.00**. *Id*.

35. Defendant's calculation of the amount placed in controversy by Plaintiff's claims for unpaid overtime is at least **$1,486,760.25** (172,378 workweeks x (1.5 x $23.00) x 0.25 hours). This calculation is based on the estimate that putative class members worked 15 minutes of unpaid overtime per week.

36. Defendant's estimate is conservative and reasonable. *See, e.g., Vasquez v. RSI Home Products, Inc*., 2020 WL 6778772, at *6–*7 (C.D. Cal. Nov. 12, 2020) (assumption of 30 minutes of overtime per week was reasonable based upon evidence that class members worked on average 8.61 hours per day*); Torrez v. Freedom Mortgage, Corp*., 2017 WL 2713400, at *4 (C.D. Cal. Jun. 22, 2017) (finding that assumption of three hours per week was reasonable); *Francisco v. Emeritus Corp.,* 2017 WL 2541401, at *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per workweek to be reasonable."); *Feao v. UFP Riverside, LLC,* 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) (approving of defendant's "measured" assumption that "each class member worked only one unpaid hour of overtime and missed only one hour of minimum wage work per work week"); *Ray v. Wells Fargo Bank, N.A.,* 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011) (allegation of "consistent overtime work" justified defendant's "reasonable and conservative" assumption that each class member was entitled to one hour of overtime per week).

---

[3] When calculating the amount in controversy for an overtime wages claim, courts routinely accept the use of average rates of pay. *See, e.g., Hernandez v. Nuco2 Mgmt., LLC,* 2018 WL 933506, at *6-7 (E.D. Cal. Feb. 16, 2018) (holding that "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation"); *Taylor v. United Rd. Servs., Inc.*, 313 F. Supp. 3d 1161, 1179 (E.D. Cal. 2018) (same).

37. Consequently, the amount placed in controversy by the Unpaid Overtime Wages Claim, based on Plaintiff's allegations, is at least **$1,486,760.25** (172,378 workweeks x (1.5 x $23.00) x 0.25 hours).

### (c) The amount placed in controversy by the failure provide meal periods claims.

38. In his Third Cause of Action, Plaintiff alleges that Defendant failed to provide putative class members with meal periods or premium payment in lieu thereof. Ex. 1, ¶¶ 28, 67. Plaintiff further alleges the following with respect to his meal period claims:

- "Defendants employed policies, practices, and/or procedures that resulted in their failure to authorize or permit meal periods to Plaintiff and the Meal Period Class of no less than thirty (30) minutes for each five-hour period of work as required by law." Ex. 1, ¶ 67.

- "Such policies, practices, and/or procedures included, but were not limited to, requiring Plaintiff and the Meal Period Class to travel to a designated area away from their workstations during their meal periods. Defendants did not elongate or otherwise extend Plaintiff's and the Meal Period Class' meal period times to account for travel time …" Ex. 1, ¶ 67.

- "Defendants lacked a policy and procedure for compensating Plaintiff and the Meal Period Class with premium wages when they did not receive all legally required and legally compliant meal periods." Ex. 1, ¶ 68.

39. Under California law, employees who are not provided meal periods are entitled to one hour of premium pay for each day that a meal period is not provided. Labor Code § 226.7(c). Meal period claims are properly considered in determining the amount in controversy. *See, e.g., Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019); *Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

40.     When determining the amount placed in controversy by a plaintiff's allegations regarding a common "policy" or "practice" of meal period violations like those alleged by Plaintiff in the Complaint, an estimate of a 20% meal period violation rate is both reasonable and conservative.  *See Chavez*, 2019 WL 1501576, at *3 ("Courts in this Circuit, including in this [Northern] District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods; collecting cases); *Hender v. Am. Directions Workforce LLC*, 2020 WL 5959908 *2 (E.D. Cal. Oct. 7, 2020) (finding a 20% violation rate reasonable when a plaintiff "claims a 'policy and practice' of denying employees meal and rest breaks"); *Trigueros v. Stanford Fed. Credit Union*, 2021 WL 2649241, at *3 (N.D. Cal. June 28, 2021) (same.); *Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) (same); *Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (approving one missed meal period per week as "reasonable" in light of policy or practice allegations.).

41.     Based on a review of Defendant's business records, during the Class Period, the putative class members worked an aggregate of **at least 172,378** workweeks and received an average hourly rate of at **$23.00**.  *See* Rojas Decl., ¶ 10.

42.     Based on a conservative analysis using a 20% violation rate, Defendant's calculation of the amount placed in controversy based on Plaintiff's allegations in support of his claim for failure to provide legally compliant meal periods is **at least $3,964,694.00**.  The computation of the amount in controversy is based on conservative calculations that during the Class Period, putative class members worked **at least 172,378** workweeks, that there was a 20% meal period

///

///

///

violation rate, and each putative class member earned an average hourly rate of $23.00.[4]  *See* Rojas Decl., ¶ 10.

43.     Consequently, the amount placed in controversy based on Plaintiff's allegations in support of his the Meal Period Claim is at least **$3,964,694.00** ($23.00 x 172,378 workweeks x 0.2).

### (d) The amount placed in controversy by the failure to provide rest breaks claim.

44.     In his Fourth Cause of Action, Plaintiff alleges that Defendant failed to provide putative class members with rest breaks or premium payment in lieu thereof. Ex. 1, ¶¶ 34, 76.  Plaintiff alleges regular and systemic failures to provide rest periods:

- "Defendants employed policies, practices, and/or procedures that resulted in their failure to authorize or permit all legally required and compliant rest periods to Plaintiff and the Rest Period Class."  Ex. 1, ¶ 76.

- "Requiring Plaintiff and the Rest Period Class to travel to a designated area away from their workstations during their rest periods. Defendants did not elongate or otherwise extend Plaintiff's and the Rest Period Class's rest period times to account for travel time between their workstations and the designated break area resulting in rest periods less than a net 10-minutes."  Ex. 1, ¶ 76(a).

- "Requiring Plaintiff and the Rest Period Class to remain on-duty due to Defendant's requirement that Plaintiff and the Rest Period Class remain on the premises during rest periods."  Ex. 1, ¶ 76(b).

---

[4]     Relying on the average hourly rate of pay is well-accepted for calculating the amount placed into controversy for meal and rest period claims.  *See, e.g., Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *2 (C.D. Cal. Apr. 9, 2019) (meal and rest); "[T]he average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation; *Hernandez v. Nuco2 Mgmt., LLC*, 2018 WL 933506, at *5 (E.D. Cal. Feb. 16, 2018) (holding that "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation").

- "Defendants failed to pay Plaintiff and the Rest Period Class one (1) hour of pay at their regular rate of pay for each workday they did not receive all legally required and legally compliant rest periods." Ex. 1, ¶ 77.

45. Under California law, employers must provide at least one 10-minute rest period for shifts 3.5 hours or greater. *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1029 (2012). Employees who are not provided the opportunity to take a rest period are entitled to one hour of premium pay for each day that the opportunity to take a rest period is not provided. *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011). Rest period claims are properly considered in determining the amount in controversy. *See, e.g., Arias v. Residence Inn by Marriott*, 936 F.3d 920, 926-27 (9th Cir. 2019).

46. Based on a review of Defendant's business records, during the Class Period, the putative class members worked an aggregate of **at least 172,378** workweeks and received an average hourly rate of at **$23.00**. *See* Rojas Decl., ¶ 10.

47. Based on a conservative analysis using a 20% violation rate, Defendant's calculation of the amount placed in controversy based on Plaintiff's allegations in support of his claim for failure to provide legally compliant rest periods is at least **$3,964,694.00**. The computation of the amount in controversy is based on conservative calculations that during the Class Period, putative class members worked **172,378** workweeks, that there was a 20% rest period violation rate, and each putative class member earned an average hourly rate of $23.00. *See* Rojas Decl., ¶ 10.

48. Courts accept an assumed 100% rest period violation rate when there are allegations of widespread failures to provide rest periods, as there are here. *See, e.g., Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015) (accepting a 100% rest period violation rate where plaintiff "alleges that 'at all material times,' Defendant failed to provide putative class members with uninterrupted meal and rest periods"); *Mejia v. DHL Express (USA), Inc.*, 2015

WL 2452755, at *4 (C.D. Cal. May 21, 2015) (approving 100% rest period violation rate where Plaintiff alleges that Defendant maintained uniform policies, practices, and procedures that caused violation of California's rest period laws"); *Dawson v. Hitco Carbon Composites, Inc.*, 2016 WL 7235629, at *4 (C.D. Cal. Dec. 14, 2016) (approving 100% rest period violation rate based on allegation that "[a]t all material times," Defendant failed to provide the requisite uninterrupted meal periods and rest periods"); *Feltzs v. Cox Commc'ns Cal., LLC*, 2020 WL 133687, at *4 (C.D. Cal. Jan. 13, 2020) (finding allegations of "consistently" violating meal periods supported a 100% rate).

49. Nonetheless, and even though the Complaint contends that "Defendants employed policies, practices, and/or procedures that resulted in their failure to authorize or permit all legally required and compliant rest periods," Defendant conservatively assumes a 20% rest period violation rate.

50. Consequently, the amount placed in controversy based on Plaintiff's allegations in support of his Rest Period Claim is at least **$3,964,694.00** ($23.00 x 172,378 workweeks x 0.2).

### (e) Summary of Defendant's calculations.

51. As described above, a conservative estimate of the amount in controversy presented by Plaintiff's minimum wage, overtime wage, meal period, and rest break claims exceed the jurisdictional minimum of $5,000,000. These 4 claims have placed at least $13,380,842.25 in controversy, summarized as follows:

| Claim | Estimated Exposure |
|---|---|
| Minimum Wages | $3,964,694.00 |
| Overtime Wages | $1,486,760.25 |
| Meal Period | $3,964,694.00 |
| Rest Period | $3,964,694.00 |
| **Total** | **$13,380,842.25** |

52. Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## IV. DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS

53. <u>Venue is Proper</u>. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending. The Superior Court of the State of California for the County of Riverside is located within the Central District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

54. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

55. In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Riverside. Notice of compliance shall be filed promptly afterward with this Court.

56. As required by Federal Rule of Civil Procedure rule 7.1, Defendant has concurrently filed its Certificate of Interested Parties and Disclosure Statement.

57. Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal.

WHEREFORE, Defendant removes this action to this Court.

DATED: June 7, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: _____
Linda Claxton
Daniel N. Rojas
Attorneys for Defendant
BLUETRITON BRANDS, INC.